NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>DAYTONA HOLDINGS, INC.,<br><br>           Debtor. | On Appeal from an Order for the United States Bankruptcy Court, District of New Jersey |
| JON COLIN,<br><br>           Appellant,<br><br>v.<br><br>TED LISCINSKI,<br><br>           Appellee. | Civ. No. 15-2874<br><br>OPINION |

THOMPSON, U.S.D.J.

      This matter comes before the Court on an appeal by Appellant Jon Colin from a decision of the Bankruptcy Court on February 5, 2015, implemented in a February 13, 2015 Order. (ECF Nos. 1, 4). The decision denied Appellee Ted Liscinski's Motion to Compel the Appellant to close on the purchase of the assets of Debtor Daytona Holdings, Inc. (*Id.*). Appellant does not appeal the outcome of the Motion but rather, the Bankruptcy Court's findings that a contract between Appellant and Appellee existed and that the Statute of Frauds was satisfied. (ECF No. 4). Appellee opposes. (ECF No. 6). For the reasons below, the February 13, 2015 Order of the Bankruptcy Court will be affirmed.

BACKGROUND

This case involves Appellant Jon Colin's alleged purchase of the assets of Debtor Daytona Holdings, Inc. ("Debtor").  Appellee Ted Liscinski served as Trustee of the Debtor's estate and brokered the alleged deal.

Debtor operated an airport shuttle business.  On December 9, 2009, Debtor filed for bankruptcy relief under Chapter 11 of the United States Code (11 U.S.C. § 101 *et seq.*).[1]  Prior to Appellant's alleged purchase of Debtor's assets, Debtor entered into an Asset Purchase Agreement to sell its assets to another buyer, State Shuttle Worldwide, Inc. ("State Shuttle").  In light of the bankruptcy proceedings and the need for Bankruptcy Court approval of the sale of assets, Debtor and State Shuttle executed an Interim Agreement in which Debtor allowed State Shuttle use of the assets prior to closing, and State Shuttle agreed to make scheduled payments for the assets.  But State Shuttle failed to make the scheduled payments, so Appellee (Debtor's Trustee) filed suit against State Shuttle and obtained a default judgment ("State Shuttle Judgment") in June 2013 in the amount of $947,270.  The failed sale to State Shuttle also meant that Appellee started looking for another buyer for Debtor's assets.

A few months later, Appellant Jon Colin began negotiations with Appellee regarding Appellant's purchase of Debtor's assets, including the assets in the possession of State Shuttle. By email on December 24, 2013, Appellant's counsel offered to pay $100,000 for the assets, stating that "[m]y client acknowledges that they may not be purchasing anything and all they may[ ]be purchasing is the causes of action that they have in order to pursue the assets of the

---

[1] On July 20, 2010, at the request of Debtor, the Court converted the bankruptcy proceeding to a Chapter 7 proceeding.

debtor."[2]  (Dec. 24, 2013 Email from Barry Frost to Jeffrey Posta, R. at A148).  On January 27, 2014, Appellee's counsel responded, saying that the Appellee "needs to get $200,000 to make a meaningful distribution to creditors" and making a counteroffer of $250,000.  (Jan. 27, 2014 Email from Jeffery Posta to Barry Frost, R. at A149).  On January 30, 2014, Appellant's counsel increased the offer to $200,000, contingent upon a 45-day due diligence period.  (Jan. 30, 2014 Email from Barry Frost to Jeffrey Posta, R. at A151).  On February 17, 2014, Appellant's counsel sent a follow-up email, reiterating the offer of $200,000, contingent upon a 45-day due diligence period.  (Feb. 17, 2014 Email from Barry Frost to Jeffrey Posta, R. at A152).  Appellant's counsel's February 17, 2014 email concluded, "I look forward to hearing from you and to receive from you a copy of the motion for sale as well as the notice of proposed private sale to be circulated by the Clerk of the Court."  (*Id.*).

In response to this email, Appellee filed a Motion seeking "approval of the sale of any assets or property rights of the Estate, and the State Shuttle Judgment" for $200,000 to Appellant, contingent upon a 45-day due diligence period from the date that the Court either approved the sale, or from when no objections were filed to the sale ("Sale Motion").  (Application in Support of Motion to Approve Sale of Assets Pursuant to Section 363(b), R. at A5-7).  Appellee also published a Notice of Private Sale listing the same terms and conditions.  (Information for Notice of Private Sale by the Trustee, R. at A10).  No one objected to the Sale Motion.  So by an Order dated April 17, 2014, the Bankruptcy Court authorized Appellee to

---

[2] Despite this disclaimer, there is disagreement between the parties as to what the Debtor's assets included—Appellee alleges that these assets included only the State Shuttle Judgment, whereas Appellant alleges that the assets included the State Shuttle Judgment as well as certain exclusive transportation routes certified and distributed by the New Jersey Department of Transportation.  *Compare* (Appellant's Br. at 4, ECF No. 4), with (Appellee's Br. at 7-8, ECF No. 6).

"consummate the transaction proposed in the Sale Motion." (Order Approving Sale of Assets Pursuant to Section 363 (b), R. at A12).

Following the entry of the Order approving the sale, Appellant began his due diligence investigation, which was set to end on June 5, 2014. The parties had several conversations about Debtor's assets during this period. Appellant claims that he was concerned about his ability to obtain title to the assets, and claims that he notified Appellee that he would need more than 45 days to complete his due diligence. (Appellant's Br. at 6, ECF No. 4). Appellee claims that the 45-day due diligence period ended with no notification from Appellant that he would not close on the sale. (Appellee's Br. at 9, ECF No. 6). In either case, after the 45-day period had elapsed, Appellee attempted to schedule a closing, but Appellant refused to close.

On October 29, 2014, after the sale did not close, Appellee filed a Motion to Compel Appellant's compliance with the Order approving the sale of assets pursuant to Section 363(b). (R. at A19-27). On November 18, 2014, Appellant filed opposition to the Motion to Compel, arguing that the parties had not entered into a contract because there was no meeting of the minds and that Appellee could not satisfy the Statute of Frauds. (R. at A49-65). The Bankruptcy Court heard oral argument on November 25, 2014. On February 5, 2014, the Court issued a Letter Decision holding that (1) a valid and enforceable contract between the parties existed as evidenced by the February 17, 2014 email, the Sale Motion, the Notice of Private Sale, and the Order granting the Sale Motion; (2) a meeting of the minds existed such that a contract existed and was enforceable; (3) to the extent the Statute of Frauds applied,[3] the Statute was satisfied, or

---

[3] The Bankruptcy Court noted that "[t]he record was not sufficiently developed" on the question of whether the Statute of Frauds applied and that "there are additional reasons why the statute of frauds has no application here," but did not elaborate. (February 5, 2015 Letter Decision at A299 n.9, R. at A294-302).

4

the parties were excused from strict compliance through promissory estoppel; and (4) summary judgment for specific performance was not warranted due to disputed issues of material fact, namely whether Appellant breached his contract with Appellee, and if so, the value of any resulting damages.  (February 5, 2015 Letter Decision, R. at A294-302).  An Order implementing the decision was issued on February 13, 2015.  (Order denying Motion to Compel compliance with an Order approving the sale of assets, R. at A303-04).

On February 25, 2015, Appellant filed a Motion for Reconsideration.  (R. at A305-13).  The Bankruptcy Court heard oral argument on the Motion on April 7, 2015 and denied the Motion on April 9, 2015.  (R. at A320-21).  Then, on April 23, 2015, Appellant appealed from the Bankruptcy Court's February 13, 2015 Order, specifically the findings that a contract existed between the parties and that the Statute of Frauds was satisfied.  (ECF No. 1).  Appellant filed his brief in this Court on August 28, 2015 (ECF No. 4), and Appellee filed a response on September 28, 2015.  (ECF No. 6).  This appeal is presently before the Court.

## DISCUSSION

A.  Legal Standard

District courts have jurisdiction over appeals from decisions of bankruptcy judges under 28 U.S.C. § 158(a)(3). Bankruptcy Rule 8013 states that a district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bank. P. 8013.  The district court "review[s] the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re Am. Pad & Paper Co.*, 478 F.3d 546, 551 (3d Cir. 2007); *see also* Fed. R. Bank. P. 8013 (directing that "[f]indings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of

5

witnesses."). A factual finding is clearly erroneous where "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Cellnet Data Systems, Inc.*, 327 F.3d 242, 244 (3d Cir. 2003).

   B. Analysis

Appellant makes two claims: first, that the Bankruptcy Court erroneously found that a contract existed because there was no meeting of the minds between the parties and there was no contractual certainty as to certain key terms of the offer, namely what the Appellee actually had to commit to a sale and the terms of the closing of the proposed transaction. Second, Appellant argues that the Bankruptcy Court misapplied the Statute of Frauds to the facts, because the Bankruptcy Court found that the Statute of Frauds did not apply, and if the Statute of Frauds did apply, that the Statute was satisfied.

   i. *Existence of a Contract*

First, Appellant argues that the Bankruptcy Court erred when it found that a contract between Appellant and Appellee existed, because there was no meeting of the minds between the parties and the terms of the offer were not reasonably clear. Appellant points to the parties' different understandings of the contents of Debtor's assets and the parties' obligations at the end of the due diligence period as two key terms that were not reasonably clear, leading to a lack of meeting of the minds. The Court reviews the Bankruptcy Court's legal determination that a contract existed de novo.

To form a contract, there must be a "meeting of the minds," as evidenced by each side's express agreement to every term of the contract. *State v. Ernst & Young, L.L.P.*, 902 A.2d 338, 345 (N.J. Super. Ct. App. Div. 2006). When the parties expressly agree to a contract term, the mere fact that the parties have a different subjective understanding of that term does not prevent

6

the formation of a binding agreement.  *Leitner v. Braen*, 143 A.2d 256, 260 (N.J. Super. Ct. App. Div. 1958) (finding that an agreement to pay "the usual sponsoring fees" was binding even though the parties had different understandings of this term); *Paley v. Barton Sav. & Loan Ass'n*, 196 A.2d 682, 685 (N.J. Super. Ct. App. Div. 1964) (enforcing a contract containing the term "minority group loans" even though that term has no commonly understood meaning).  The terms of the contract must be sufficiently definite that the performance by each party can be ascertained with reasonable certainty.  *See, e.g.*, *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992).  But "[t]his does not mean that each term must be exactly spelled out."  *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1025 (D.N.J. 1995).  Where the parties have manifested assent to enter into a bargain, the courts will fill gaps or interpret ambiguous terms rather than void a contract for vagueness.  *See, e.g.*, *id.* at 1025-26; *Satellite Entm't Ctr., Inc. v. Keaton*, 789 A.2d 662, 667 (N.J. Super. Ct. App. Div. 2002); *Paley*, 196 A.2d at 686.

   Here, the parties had a meeting of the minds, as clearly expressed in the plain language of the February 17, 2014 email, the Sale Motion, and the Notice of Private Sale.  Appellee agreed to sell to Appellant all of Debtor's assets, including the State Shuttle Judgment, for $200,000.  Any disagreement between the parties about the contents of those assets reflected subjective understandings of the express terms, based on the accessibility of the assets in question, not manifested in the parties' written agreement.  Moreover, the parties' email communications suggest that the parties even had relatively similar subjective understandings of the assets:  Appellant's agent states, "My client acknowledges that they may not be purchasing anything and all they may[ ]be purchasing is the causes of action that they have in order to pursue the assets of the debtor." (Dec. 24, 2013 Email from Barry Frost to Jeffrey Posta, R. at A148).  While

7

Appellant may have secretly hoped that Appellee would convey more substantial assets, he did not manifest this expectation to Appellant as part of the contract.

The parties also had a meeting of the minds on the inclusion of a 45-day due diligence period, as manifested in the plain language of the February 17, 2014 email, the Sale Motion, and the Notice of Private Sale. While the contract left open the mechanics of closing after the due diligence period, this relatively minor open term does not make the contract unenforceable for vagueness. Rather, the open term requires the Bankruptcy Court to fill the gap or to interpret the ambiguous language to determine the intent of the parties. As the Bankruptcy Court stated, "The fact that the parties disagree about the obligation to close at the end of the due diligence period is relevant to the question of breach, not to whether a contract existed." (February 5, 2015 Letter Decision at 6, R. at A299).

Given the parties' meeting of the minds and the clarity in the contract's essential terms, the Bankruptcy Court did not err in finding that a contract between Appellant and Appellee existed.

    ii.    *Application of the Statute of Frauds*

Second, Appellant suggests that the Bankruptcy Court erred in finding that the Statute of Frauds did not apply and argues that any contract between the parties would be void because the parties' writings do not satisfy the Statute of Frauds. As a question of law, this Court reviews the Bankruptcy Court's application of the Statute of Frauds to the facts de novo.

The New Jersey Statute of Frauds provides that

> a contract for the sale of goods for the price of $500 or more is not enforceable unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

N.J. Stat. Ann. § 12A:2-201 (West).  A writing is "in confirmation of the contract" if it "indicate[s] that a binding or completed transaction has been made."  *Trilco Terminal v. Prebilt Corp.,* 400 A.2d 1237 (N.J. Super. Ct. Law Div. 1979) (citation omitted), *aff'd,* 415 A.2d 356 (App. Div. 1980).  A writing that does no more than reference past negotiations or contemplate a proposed transaction will not satisfy the Statute of Frauds.  *See, e.g.*, *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 861 (3d Cir. 1994); *Aircraft Inventory Corp. v. Falcon Jet Corp.*, 18 F. Supp. 2d 409, 414 (D.N.J. 1998) (finding that a letter making "a typical offer" did not satisfy the writing requirement of the Statute of Frauds).  But multiple writings taken together may satisfy the Statute of Frauds if the signed writing references the other, unsigned writings.  *See, e.g.*, *Flight Sys., Inc. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 128 (3d Cir. 1997); *Becker v. Kelsey*, 157 A. 177, 189 (N.J. Sup. Ct. 1931); *Johnson v. Buck*, 35 N.J.L. 338, 344 (Sup. Ct. 1872).

      This Court agrees with the Bankruptcy Court that the record is not developed enough to ascertain whether the Statute of Frauds applies, because it is unclear whether this transaction involves the sale of goods.  If the Statute of Frauds does apply, the parties' writings satisfy its demands.  The Bankruptcy Court found that the emailed communications between the parties, the Sale Motion, the Notice of Private Sale, and the Sale Order constitute the writings necessary to overcome the Statute of Frauds.  Appellant, through his agent, signed only one of these writings, the email communications.  The final email communication of the transaction, the February 17, 2014 email, represents a typical offer: Appellant "propose[s] to pay" a certain sum and describes the email as an "offer."  (Feb. 17, 2014 Email from Barry Frost to Jeffrey Posta, R. at A152).  Taken by itself, an offer like this would not satisfy the Statute of Frauds.  However, the signed email references the Sale Motion and the Notice of Private Sale, which allows the Court to consider all three documents together.  The Sale Motion and the Notice of Private Sale

9

do indicate that a completed transaction occurred between Appellant and Appellee, on the same terms recited in the February 17 email signed by Appellant's agent.  Taken together, the parties' documents satisfy the Statute of Frauds, and the Bankruptcy Court did not err in making this conclusion.

## CONCLUSION

For the reasons above, the February 5, 2015 ruling of the Bankruptcy Court, implemented in its February 13, 2015 Order, will be affirmed.  A corresponding Order follows.


*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.